Montice L. Scull et al., complainants-respondents,

*v.*

John F. Eilenberg, defendant-appellant.

[Submitted March 21st, 1923. Decided June 18th, 1923.]

1. Prior to 1887, the C. B. Co., owner of a tract of land in Atlantic City, divided it into blocks and lots. It then conveyed lots subject to the restriction, among others, that no building should at any time be erected within twenty feet of the front property line of any street or avenue, except on Atlantic avenue. Subsequently, the C. B. Co., in 1889, passed a resolution to the effect that the above restriction on Atlantic avenue lots was null and void and that the restriction should thereafter be that no building should at any time be erected on a corner lot on Atlantic avenue within five feet from the side street property line. Subsequent deeds made by the C. B. Co., contained this modified restriction. S., an owner of a lot on Montpelier avenue, a side street, which had been sold under the earlier form of restrictions, filed a bill in the court of chancery against E., owner of a lot at the southwest corner of Atlantic and Montpelier avenues, also sold under the earlier form of restrictions, to enjoin E. from erecting a building within twenty feet of the side line of Montpelier avenue. *Held*, that in view of the fact that the C. B. Co. did not obligate itself to insert the same restrictions in all its deeds, or did not sell the lots on the representation that all lots would be conveyed subject to the same restrictions, and subsequently altered the restrictions relating to corner lots on Atlantic avenue, that it was inequitable to enforce against E. by injunction, the restriction requiring a building upon his lot to stand back twenty feet from the side line of Montpelier avenue, when buildings on other corner lots on Atlantic avenue had been erected within twenty feet of the side street property line.

2. A neighborhood scheme of restrictions must be universal and reciprocal. The same restrictions must be imposed upon all lots similarly situated. If the restrictions upon all lots similarly located are not alike, or some lots are not subject to restrictions, while others are, then the neighborhod scheme falls.

3. In a neighborhood plan of restrictions the burden follows the benefit. If the restrictions are so altered that the benefit is destroyed or impaired, equity will refuse to impose the burden.

4. When a proposed neighborhood plan of restrictions has been changed by altered restrictions contained in subsequent deeds for lots similarly located so that the enforcement of the original restriction will be a burden upon the restricted property without conferring any appreciable benefit on the property of the one seeking to enforce the restriction, a court of equity will refuse to enforce the restriction.

On appeal from a decree of the court of chancery.

*Messrs. Bourgeois & Coulomb,* of counsel with the appellant.

*Messrs Cole & Cole,* and *Mr. Norman Grey,* of counsel with the respondents.

The opinion of the court was delivered by

KATZENBACH, J.

This is an appeal from a decree of the court of chancery. The complainant below, Montice L. Scull, is the owner of a lot of land in the city of Atlantic City, fronting fifty feet on the easterly side of Montpelier avenue and distant two hundred and seventy-five feet from the southerly line of Atlantic avenue. The defendant below and appellant, John F. Eilenberg, is the owner of a lot of land located at the southwesterly corner of Atlantic and Montpelier avenues, which has a frontage of forty-two feet on Atlantic avenue and extends along the westerly side of Montpelier avenue one hundred and thirteen feet.

Prior to the year 1887, a corporation, known as the Chelsea Beach Company, owned a large tract of land of which the complainant's and defendant's lots were a part. This company caused the entire tract to be plotted and divided into blocks

and lots (both numbered) and a map thereof to be made, which was filed in the Atlantic county clerk's office. The lot of the complainant, Scull, was conveyed by the company by deed dated May 28th, 1887, and the lot of the defendant, Eilenberg, was conveyed by the company by deed dated March 16th, 1887. The deeds by which the title to these two lots passed from the Chelsea Beach Company, contained certain restrictions and covenants. Among these are the following, which are the ones pertinent to this case: "Under and subject nevertheless to the following covenants and conditions which are hereby made a part of the consideration of this conveyance: That no building shall, at any time, be erected within twenty feet of the front property line of any street or avenue, except on Atlantic avenue, nor within five feet of the side lines of said lot, except where a party may own two or more contiguous lots, then a building may be erected on any part of the lot or lots the owner thereof may desire, without regard to the intervening line or lines, provided the same is not built within five feet of the outside lines of the "said lots, nor within twenty feet of the front property line thereof, and also, that no building of less value than $500 shall be erected thereon." * * *

"And also under and subject to the covenants and conditions, that no stores, except drug and confectionery stores, shall be allowed on any part of the Chelsea Beach Company's property except on Atlantic avenue * * *."

"And it is expressly understood and agreed, that the said several covenants on the part of the said party of the second part, above specified, shall attach to and run with the land, and it shall be lawful not only for the said Chelsea Beach Company, and their successors and assigns, but also for the owner or owners of any lot or lots adjoining in the neighborhood of the premises hereby granted, deriving title from or through the said Chelsea Beach Company, to institute and prosecute any proceedings at law or in equity against the person or persons violating or threatening to violate the same, it being understood, however, that this covenant is not to be enforced personally for damages against the said party of the second part, his heirs or assigns, unless he or they be the owner or owners of the said premises or of some part thereof at the time of a violation of the said covenant or of a threatened or attempted violation thereof; but the said covenant may be proceeded in for an injunction of and for a specific execution thereof against the said party of the second part, his heirs or assigns,

and for damages against the party or parties violating the said cove-
nant, they or their heirs, executors or assigns.

"The object of these covenants being to secure the health, beauty,
ornamentation and value of the premises."

In the deeds to the complainant and defendant these restric-
tions and covenants are referred to.

It is apparent from the working of the restrictions and
covenants above set forth that the purpose of the Chelsea
Beach Company was to create a general neighborhood scheme
or plan which would, if carried out, result in the increased
enjoyment of the lots by the users, and a greater value to the
owners. The restrictions and covenants state the purpose in
the words "the object of these covenants being to secure the
health, beauty, ornamentation and value of the premises."

It is also apparent from the restrictions that Atlantic ave-
nue was placed in a different class than the other streets and
avenues in the tract. The restrictions provided that no
stores, except drug and confectionery stores, were to be per-
mitted on any of the streets or avenues except Atlantic avenue.
This permitted stores for business of all kinds to be erected
on Atlantic avenue. The restrictions also provided that "no
building shall at any time be erected within twenty feet of
the property line of any street or avenue, except on Atlantic
avenue." This restriction also recognized that Atlantic ave-
nue was destined to be in this section a business street as it
then was to the east of this locality.

A neighborhood scheme of restrictions to be effective and
enforceable must have certain charactertistics. It must be
universal, that is, the restrictions must apply to all lots
of like character brought within the scheme. Unless it be
universal it cannot be reciprocal. If it be not reciprocal, then
it must as a neighborhood scheme fall, for the theory which
sustains a scheme or plan of this character is that the re-
strictions are a benefit to all. The consideration to each lot
owner for the imposition of the restriction upon his lot is
that the same restrictions are imposed upon the lots of others
similarly situated. If the restrictions upon all lots similarly
located are not alike, or some lots are not subject to the

restrictions while others are, then a burden would be carried by some owners without a corresponding benefit. "The burden follows the benefit," as was said by Judge White in the case of *Sanford* v. *Keer, 80 N. J. Eq. 240.* When there is no benefit there should be no burden. If the benefit be destroyed the burden should end. The requisite universality of the neighborhood plan was referred to by the late Vice-Chancellor Green in the case of *DeGray* v. *Monmouth Beach Club House Co., 50 N. J. Eq. 329,* in the following language: "The law, deducible from these principles and the authorities, applicable to this case, is that where there is a general scheme or plan, adopted and made public by the owner of a tract, for the development and improvement of the property, by which it is divided into streets, avenues and lots, and contemplating a restriction as to the uses to which buildings or lots may be put, to be secured by a covenant embodying the restriction, to be inserted in each deed to a purchaser, and it appears, by writings or by the circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject to and to have the benefit thereof, and the covenants are actually inserted in all deeds for lots sold in pursuance of the plan; one purchaser and his assigns may enforce the covenant against any other purchaser and his assigns, if he has bought with knowledge of the scheme, and the covenant has been part of the subject-matter of his purchase.

"The right of action from this would seem to be dependent as much on the fact of the general scheme as on the covenant—a very important consideration in a case in which the question arises whether certain threatened acts are in violation of the covenant, if any ambiguity exists as to its scope and meaning."

Where the restrictions are not universal or after frequent violations of the restrictions have been permitted, then the neighborhood scheme will be considered abandoned.

About two years after the deeds were made by the Chelsea Beach Company to the complainant's and defendant's predecessors in title, some question evidently arose as to whether

or not the restriction "that no building shall at any time be erected within twenty feet of the front property line of any street or avenue, except on Atlantic avenue," applied to lots located at the corners of Atlantic avenue and intersecting streets so as to require buildings erected on these lots to be located twenty feet from the property line of the side streets.    On April 30th, 1889, the Chelsea Beach Company made a deed to Charles R. Myers, which contained the usual restrictions, and at the end of the restrictions a copy of a resolution purporting to have been passed by the company reading as follows: "By resolution of the board of directors of the said Chelsea Beach Company, the above restriction on the Atlantic avenue lots is rendered null and void and the following restriction is hereby made a part of this conveyance; that no building shall at any time be erected on a corner lot on Atlantic avenue within five feet from the side street property line, but may be erected to full party line of adjoining lot; and all other Atlantic avenue lots may be erected to full party line of adjoining lots."

Thereafter, in its conveyances the Chelsea Beach Company after the restrictions recited this resolution, so that after 1889 the restrictions did not require buildings erected on the corner lots on Atlantic avenue to stand back twenty feet from the property line of side streets.    In the tract of land of the Chelsea Beach Company there are on Atlantic avenue sixteen corner lots.    On ten of these corners buildings are now erected within less than twenty feet of the property line of the side streets.

On July 27th, 1922, Scull, having learned that Eilenberg proposed to erect on his lot at the southwest corner of Atlantic and Montpelier avenues a building which would come within less than twenty feet of the property line of Montpelier avenue, served a notice on Eilenberg, warning him that such contemplated building construction would be in violation of the restrictions contained in his deed from the Chelsea Beach Company.    On July 29th, 1922, Scull filed a bill in the court of chancery to enjoin the construction of

the proposed building within less than twenty feet of the property line of Montpelier avenue.

Eilenberg, in his answer, admitted his intention of building within less than twenty feet of the property line of Montpelier avenue, and claimed the right to do so upon the ground of passage in 1889 of the resolutions by the board of directors of the Chelsea Beach Company above set forth and the subsequent conveyances of the remaining corner lots on Atlantic avenue with the changed restrictions, the abandonment and waiver of the restrictions by numerous violations thereof, and the violation of the restrictions by the complainant. The case came on for hearing before a vice-chancellor, who decided the questions raised in the answer adversely to the defendant and advised a decree enjoining the erection of the proposed building on the defendant's land nearer than twenty feet to the "front property line of Montpelier avenue," and directing the removal of so much of the building already constructed as is nearer than twenty feet to the "front property line of Montpelier avenue." The learned vice-chancellor based his decision upon a case involving the same restriction and decided by the court of chancery on December 5th, 1895, and later affirmed by this court without an opinion or *per curiam*. This case is entitled *Waters* v. *Collins*, and is only reported in *70 Atl. Rep. 984*. Waters owned a lot on Montpelier avenue. Collins owned the lot on the northeast corner of Atlantic and Montpelier avenues. Collins started to erect a building about seven feet from the line of Montpelier avenue. Waters filed a bill in the court of chancery to enjoin Collins from erecting the building. The deeds of Waters and Collins had in them the restrictions and covenants above set forth. Collins set up in his answer that the restriction did not apply to the side line of his lot on Montpelier avenue; that this restriction upon his lot was nullified by the 1889 resolutions and later conveyances of the Atlantic avenue corner lots with modified restrictions, and that there had been a practical construction of the restrictive clause limiting the restriction on the side lines of the Atlantic avenue corner lots to a

five-foot space. In the case of *Waters* v. *Collins,* the learned vice-chancellor, in disposing of the defences set up in the answer, held that the lot of Collins fronted on two streets, namely, Atlantic avenue and Montpelier avenue, and was within the restriction, providing that a building on streets other than Atlantic avenue must stand back twenty feet from the front property line. He also held that the 1889 resolution and subsequent conveyances could not affect the contractural rights to the parties to the deeds. His language on this subject was: "The company could not sell lots, holding out to the grantees a restrictive scheme intended to advance the value of the property sold, at the expense of property to be yet sold, and afterwards receive an enhanced price for subsequent lots, by a removal in whole or in part of the restriction bargained for. To the point that a party cannot be absolved from such a restriction by a subsequent agreement or resolution is the case of *Coudert* v. *Sayre, 46 N. J. Eq. 386; 19 Atl. Rep. 190.*"

The case of *Waters* v. *Collins* presented the same facts and the same question as the case under consideration. Notwithstanding the decision in *Waters* v. *Collins,* which was affirmed, in the manner mentioned, by this court, we are of the opinion that this case was wrongly decided and that the acts of the Chelsea Beach Company in altering in its deeds executed subsequent to the passage of the 1889 resolutions the restrictions with reference to the Atlantic avenue corner lots brought about a situation which makes it inequitable to enforce the restriction contained in the deed for the Eilenberg lot forbidding the erection of a building upon this lot within twenty feet of the property line of Montpelier avenue.

The decision in *Waters* v. *Collins* is rested, as stated in the opinion, upon the case of *Coudert* v. *Sayre.* In this case the covenant under consideration was a restrictive covenant reserved by a grantor of lands in favor of the lands retained by him upon lands which he conveyed to the covenantor. The respective obligations of the parties were fixed by one instrument, the single deed of conveyance. The grantor and the

grantees to whom he later might convey all or any part of
the retained lands in favor of which the covenant was re-
served could enforce the restriction although such retained
lands were never subjected to any restriction. Any subsequent
grantee, upon delivery of his deed, obtained the right to en-
force the restriction or covenant against the lands of the
covenantor, that no subsequent action of the common grantor
could in anywise affect. Such a covenant as considered in
*Coudert* v. *Sayre* does not partake of any of the essential
characteristics of the neighborhood scheme of restrictions and
covenants which have been referred to. In the restrictions
and covenants inserted in the deeds of the Chelsea Beach
Company there was no reciprocal covenant made by the com-
pany that it would insert like covenants in all deeds for the
remaining lots similarly located for the common benefit of
all of the grantees and their assigns. There was no offer by
the Chelsea Beach Company of its lots for sale, subject to
restrictions and covenants alike for all lots in the same lo-
cality, so that purchasers with notice would be bound thereby.
In view of the fact that the company did not obligate itself
to insert the same restrictions and covenants in all its deeds
for lots similarly located, or did not sell its lots on the repre-
sentation that all lots similarly located would be conveyed
subject to the same restrictions and covenants, or did not
embody in all its deeds for the corner lots on Atlantic avenue
the same restrictions so that each lot which carried a burden
would receive a corresponding benefit, we feel that in so far
as the corner lots on Atlantic avenue are concerned, that an
owner should not be required to erect a building farther back
from the property line of the side street than five feet. The
inequity in enforcing in the present case the restriction
against the Eilenberg lot is apparent. The lot on the north-
west corner of Atlantic and Montpelier avenues, which is
directly opposite to the Eilenberg lot, was conveyed by the
Chelsea Beach Company without the same building restric-
tion as contained in the Eilenberg lot. On this lot is erected
a building within twenty feet of the property line of Mont-
pelier avenue. To enforce the building restriction against

the Eilenberg lot is to subject his lot to a burden when it is not correspondingly benefited, as Eilenberg's lot is deprived by the failure of the neighborhood scheme from the benefit of having the building on the opposite corner stand back from Montpelier avenue the same distance as the building which would be erected upon the Eilenberg lot if the building restriction referred to were enforced.

The lot of Eilenberg is only forty-two feet in width. The enforcement of the twenty-foot building restriction would deprive Eilenberg of the use of fifteen feet of his lot on a street devoted to business where the land must be valuable; while others, owning similar lots, would have the use of the amount of land of which Eilenberg would be deprived. It is not a sufficient answer to say that this is what the predecessor in title of Eilenberg covenanted to do, and that therefore Eilenberg must take the consequences, because the complainant below was bound to know that in the absence of a covenant on the part of the Chelsea Beach Company to insert the same restrictions and covenants in the deeds for all lots, or in the absence of a sale of the lots upon the representation that lots similarly located would be subject to the same restrictions, the neighborhood scheme might fall, and a situation be created as in the present case in which it would be inequitable to enforce a restriction against an owner of a lot, although embodied in the deed of his predecessor in title of which he had full notice when he acquired the property.

The injury to the complainant in the present case is slight, if any. His lot is nearer to the ocean than the lot of Eilenberg. The complainant by the erection of the proposed building by the appellant would be deprived of no ocean view or ocean breeze which he now has. The complainant's lot is also on the opposite side of Montpelier avenue. The lot on the southeast corner of Atlantic and Montpelier avenues, which is on the same side of Montpelier avenue as the complainant's lot, has erected upon it a building coming within twenty feet of the property line of Montpelier avenue. These facts seem to make the complainant's damage negligible. Some thirty-five years have passed since these restrictions

were inserted in the deeds mentioned. The character of the neighborhood has changed. Atlantic avenue has become in this section the business street which it was thought it would become. It does not seem reasonable that in a locality devoted to business, buildings used for business purposes, should be, in some instances, required to stand back twenty feet from the side lines of corner lots. Where restrictions have ceased to be reasonable, courts of equity are loathe to enforce them. Courts lay hold of circumstances evidencing a failure or abandonment of the restrictive scheme. The present case furnishes such abundant proof of the failure of the neighborhood scheme, so far as the corner lots on Atlantic avenue are concerned, to justify in our opinion the refusal of an injunction to the complainant. These views make it unnecessary to consider the testimony offered by the defendant to show an abandonment of the restrictions by numerous violations thereof. It also makes it unnecessary to consider the question as to whether the construction given in the case of *Waters* v. *Collins* of the twenty-foot restriction as set forth in the original deeds for the Scull and Eilenberg lots is correct. For the foregoing reasons, the decree of the court of chancery is reversed, to the end that the injunction decree may be limited to the portion of defendant's lot lying within five feet of Montpelier avenue.

WHITE, J. (concurring).

I think the neighborhood scheme, whereby buildings on lots fronting on Montpelier avenue had to set back twenty feet from the street line, did not become applicable to lots fronting also on Atlantic avenue except to the extent of the five feet prescribed in the modified restriction established by the resolution of the common grantor company passed in 1889 and embodied in all deeds made by that company after that time, several of which were for lots on Atlantic avenue, and one in particular was for a lot at the northwest corner of Atlantic and Montpelier avenues, which lot is on the same side of Montpelier avenue as is defendant's lot, and so close to it that defendant's lot would have been dependent for an

49

important part of its benefit from the twenty-foot restriction, upon such restriction being binding also upon such other lot.

It is true that in *Waters* v. *Collins, 70 Atl. Rep. 984* (affirmed by this court without a *per curiam* or an opinion, and of which affirmance there is no published report), the court of chancery, citing *Coudert* v. *Sayre, 46 N. J. Eq. 386,* as authority therefor, said that this resolution of the Chelsea Beach Company abolishing all line restrictions on lots fronting on Atlantic avenue except the restriction requiring improvements to recede five feet from side street lines, passed in 1889, and inserted in all deeds for Atlantic avenue lots and for all other lots deeded by that company after that date, could not affect the rights of the parties in that case as against each other, because their respective lots had been granted by the said common grantor in 1887, before the passage of that resolution in 1889; but in this I think the learned vice-chancellor failed to observe (because not there, as here, so pointedly involved) the essential difference in the nature of a neighborhood scheme restriction from that of a bare restrictive covenant, reserved by a grantor in favor of his retained lands, upon lands which he conveys to the covenantor. In the latter case the grantor and his subsequent grantees of all or any part of such retained lands in favor of which the covenant was reserved, may specifically enforce it (if such enforcement be equitable and reasonable in view of surrounding circumstances at the time such enforcement is asked), although such other lands were in fact never then nor afterward subjected to any restriction whatsoever, nor ever intended so to be. In such a case it is quite evident that the subsequent grantee of part of such retained lands has at once, upon receiving his deed, a fixed definite right to reasonably and equitably enforce the covenant against the lands of the covenantor, and that no subsequent action of the common grantor can affect that right. Such was the case of *Coudert* v. *Sayre, supra,* which the vice-chancellor cited as authority for the position which he took in the case of *Waters* v. *Collins.*

A neighborhood scheme, on the other hand, depends for its potency upon its reciprocal universality as affecting all the lands intended to be and actually brought within the scheme. As was said by this court in *Sanford* v. *Keer, 80 N. J. Eq. 240,* in neighborhood scheme restrictive covenants, "the burden follows the benefit." If this mutual reciprocal universal benefit intended to be conferred upon all by the scheme, fails by reason of one or more permitted violations of the covenant, whereby the benefit is destroyed, the burden ends with it, and the scheme is said to have been abandoned;" but if it fails because of the omission from the restricted lots of a lot essential to the existence of the scheme, so that improvements may be put upon or uses made of that lot contrary to the terms of the covenant, and which would destroy the benefit of the scheme to the other lots included therein, the neighborhood scheme has not been established as to, and is, therefore, not binding upon, any lots which, because of such omission, may thus be deprived of the benefit of the scheme.

How, then, is a neighborhood scheme of this character created? The most complete way, of course, is by a reciprocal covenant, whereby the grantor covenants to insert, in apt language, like covenants in all deeds of his remaining lots or lands for the common benefit of all of his grantees and their assigns. Another way is for him to offer his lots for sale, and to sell them, on the representation that all lots will be conveyed subject to like covenants for the common benefit, in which case purchasers with notice or knowledge will be bound by the covenant. But, in the absence of either of these methods (as was the case here), the courts will only spell out such a scheme from a plan of lots and sales therefrom where *all* the deeds from the common grantor for the lots making up any particular neighborhood group of common benefit therefrom, are made subject to the common covenant. If, under these circumstances, the covenant is omitted from a deed of one lot so located that a violation on that lot of the provisions of the covenant would deprive the other lots of the benefit to be derived by them from the common observance of the restriction, there is, in the absence of knowledge or

notice of the scheme on the part of the grantee in the deed for such omitted lot, a failure to make out a neighborhood scheme, at least as to that lot and as to such other lots as would lose the benefit of the scheme if it were violated on the lot not subjected to the covenant. Thus, in the leading case of *DeGray* v. *Monmouth Beach Club House Co., 50 N. J. Eq. 529,* Vice-Chancellor Green said: "The law, deducible from these principles and the authorities, applicable to this case, is that where there is a general scheme or plan, adopted and made public by the owner of a tract, for the development and improvement of the property, by which it is divided into streets, avenues and lots, and contemplating a restriction as to the uses to which buildings or lots may be put, to be secured by a covenant embodying the restriction, to be inserted in each deed to a purchaser; and it appears by writings or by the circumstances that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subjected to and have the benefit thereof; *and the covenants are actually inserted in all deeds for lots sold in pursuance of the plan,* one purchaser and his assigns may enforce the covenant against any other purchaser and his assigns if he has bought with knowledge of the scheme, and the covenant has been part of the subject-matter of his purchase.

Coming now to the case in hand, the language of the covenant speaks "neighborhood scheme," and nothing else. It says "owners of lots in the neighborhood and deriving title from the common grantor," may enforce the restriction against each other, and that it is "to secure the health, beauty, ornamentation and value of the premises." There is no covenant by the common grantor to insert the common covenant in all the deeds, nor is there any proof in the record of any other verbal or written promise or representation so to do. We are therefore left to an examination of what was actually done, to spell out the neighborhood scheme in its various gradations as applied to different sections of the tract and in its territorial extent. Obviously, from the language of the covenant itself, there was to be a radical difference in the scheme as applied to Atlantic avenue lots. They

might be used for store and business purposes of any lawful kind, barring saloons, whereas, all stores, except for the sale of drugs and candy, were prohibited on the other lots; and then also the twenty-feet restriction was expressly omitted on the Atlantic avenue front.

Personally, I have no doubt that this twenty-feet restriction was never intended to apply to the so-called side-avenue fronts of the lots shown by the filed plan as fronting on Atlantic avenue. Where Atlantic avenue lots were corner lots, I think it was intended that the five-feet-from-side-lines restriction would make them set back that distance from the side street, and that to the extent of this five-feet recession *only,* the neighborhood scheme to set buildings back from the street line, embraced in its territorial scope the lots fronting on Atlantic avenue. But the language used in the original restriction was not nearly as explicit as it might have been, and, while I think that the decision in *Waters* v. *Collins, supra,* indicates a failure therein to give full significance (1) to the express, in effect, dedication of the Atlantic avenue lots for stores and general commercial and business purposes, whereas, the provisions as to all other lots spoke "residential neighborhood;" (2) to the size of the corner lots, forty-two feet front, which, taking off the five-feet-side-line restriction on one side and the twenty-feet-so-called-side-avenue-front restriction on the other, would only leave seventeen feet to build on, whereas, the "inside" lots had thirty feet, thirty-five feet or forty feet available for building purposes according to their size after allowing for restrictions, although usually and properly corner lots for business purposes should be larger than inside lots; (3) to the filed plan showing the corner lots in question to be fronting on Atlantic avenue and not on the side avenues; (4) to the twelve-foot alley in the rear of the Atlantic avenue lots, which makes a natural or at least suitable break for the ending of the twenty-foot restriction and the commencing of the five-foot restriction, and (5) to the policy of the law which does not favor restrictions upon the free and natural use of lands and does not adopt doubtful constructions to create them; never-

theless, that decision (as I think erroneously) interpreted the language used to mean that all buildings must recede twenty feet from the side avenue frontages of corner lots fronting on Atlantic avenue.

This interpretation, therefore, must, for the purposes of this discussion (assuming, although not conceding it to be here binding upon this court, *Howland* v. *Andrus, 81 N. J. Eq. 175*), be considered an essential part of the scheme here contended for, affecting the Atlantic avenue corner lots as such scheme was originally expressed in the 1887 deeds, and that brings us to the question: "Was this scheme in fact imposed upon *all* the lots properly falling within its territorial scope, so that its intended benefit could not be defeated by the violation of its requirements on a lot upon which it was not imposed?" I think the answer must be in the negative. In 1889 (for some reason best known to itself, very likely because some purchaser of a side avenue lot took a position contrary to the real intention of the parties and set up a claim that the twenty-foot restriction on the side avenue lots was applicable also to the so-called side avenue fronts of the Atlantic avenue corner lots) the common grantor, the Chelsea Beach Company, held a meeting of its directors and passed the following resolution, which was thereafter inserted in all deeds of lots thereafter sold by such common grantor, namely:

"By resolution of the board of directors of said Chelsea Beach Company, the above restrictions on the Atlantic avenue lots are rendered null and void, and the following restriction is hereby made a part of this conveyance; that no building shall at any time be erected on a corner lot of Atlantic avenue within five feet from the side street property line, but may be erected to the full party line of the adjoining lot, and on all other Atlantic avenue lots may be erected to the full party line of adjoining lot."

If the language used in the original 1887 restriction meant what the *Waters Case* subsequently, in 1895, said it did, namely, a recession on Atlantic avenue corner lots of twenty feet from the Montpelier avenue line, that restriction was clearly not imposed upon the lot at the northwest corner of Montpelier and Atlantic avenues, except as to five feet of the

twenty feet so specified. To the extent of fifteen feet, therefore, the twenty-foot restriction was not imposed upon a lot which was so located that the benefit of this feature of the scheme would certainly fail; so far as defendant's lot on the opposite side of Atlantic avenue and upon the same side of Montpelier avenue was concerned. Consequently, I think, the scheme never became effective as to these two Atlantic avenue lots, beyond, or rather to a greater extent than, the five feet from the Montpelier avenue property line provided for in the resolution and restriction adopted in 1889. I think, therefore, that as applied to the present case, the learned vice-chancellor was clearly in error in saying in the *Waters Case, supra,* that the 1889 resolution and restriction could not affect rights between parties whose respective titles originated, as here, in deeds from the common grantor before the adoption of the 1889 resolution.

Whether the adoption of this view would result in a like modification of the twenty-foot restriction on the lots from the twelve-foot alley in the rear of the Atlantic avenue lots to the ocean lots is of course not before us in this case. Personally, it seems to me, particularly in view of language of the original covenant and of the 1889 modifying resolution, that it might well be decided that the twenty-foot restriction as actually established was well established as to the side street lots from the twelve-foot alleys in the rear of the Atlantic avenue lots to the ocean lots, although not binding except for five feet on Atlantic avenue corner lots, but, as before stated, that question is not involved in this case.

For the reasons above stated, I do not find it necessary to consider the effect upon the restrictive burden on defendant's property of any of the many violations on Montpelier avenue of the twenty-feet restrictive covenant scheme. I do not think the twenty-feet restrictive covenant is now, or ever was, since the 1889 modification, binding upon the defendant's Montpelier avenue front beyond the line five feet from said avenue provided for in such modification, and certainly the proved violations were not sufficient to encroach upon his benefit

from, and, therefore, to relieve defendant from the burden of such five-foot restriction.

But if all of this were otherwise, I am also quite clear, particularly in view of the abandonment of fifteen feet of the twenty-feet restriction on so many of the other Atlantic avenue corners, that there has been such a manifest and striking change in the character of the Atlantic avenue neighborhood as to make it unreasonable to specifically enforce as against any of the Atlantic avenue corner lots fifteen feet of the twenty-feet feature of the neighborhood scheme restrictions here contended for.   These restrictions were imposed over thirty years ago when the whole tract, then on the outskirts of the resort, was unimproved and of comparatively no business value.   Since that time the resort has so extended that the tract in question is substantially in its longitudinal centre and Atlantic avenue is the main business artery extending from one end of the city to the other.   Extensive stores and business houses of various kinds abound on both sides of this principal business thoroughfare.   The benefit to the lots shown on the plan as fronting on Montpelier and the other side avenues, from the Atlantic avenue lots to the ocean lots, of having the full twenty-foot restriction enforced also against the Atlantic avenue corner lots has, in my judgment, ceased to be of sufficient relative value to justify the continued strict enforcement of the whole of the restrictive covenant as applied to the Atlantic avenue lots.   These lots have a high market value per front foot and are very useful to the community for business purposes, and the injury to the side avenue lots in permitting the owners of the Atlantic avenue lots to build out to five feet from the side street property line is very slight, if, in fact, there is any real injury.   To this extent the restriction would seem to have ceased to be reasonable, and where that is the case, it is either fatal to an application to a court of equity to specifically enforce it, or at least the court will seize upon any circumstances evidencing its abandonment as a reason for refusing such enforcement. Such circumstances, so far as the Atlantic avenue lots are concerned, are here abundant.   The part of the original re-

striction (an important feature in the residential neighborhood scheme) whereby a five-foot open space on each side of each lot, "inside" as well as "corner," as well on Atlantic avenue as elsewhere, was provided for, has clearly become obsolete as to the Atlantic avenue lots, and is certainly no longer binding thereon; in fact, the record shows that it has long since been substantially abandoned and generally disregarded so far as Atlantic avenue is concerned. Counsel for the complainants in this case admit that this feature no longer forms a part of the general scheme as applied to the Atlantic avenue lots. The scheme claimed to be established by the *Waters Case* decision (*supra*), if established, seems to have been likewise frequently, if not generally, abandoned, as to the Atlantic avenue lots on most of the other Atlantic avenue corners, except as to the five feet prescribed by the 1889 resolution, and this, too, is so at the Montpelier and Atlantic avenues corner, where also one building has been erected out to the five-feet line. Certainly, I think, that it would be inequitable to now enforce the remaining fifteen feet of restraint on the side street lines of any of the Atlantic avenue corner lots in this tract.

As to the restrictions on the remaining five feet, the integrity of which I think has not as yet been successfully attacked by proved encroachments, if it is valuable to the owners of the other lots on the side streets to retain this feature of the scheme as applied by the resolution of 1889 to the Atlantic avenue corner lots, I think the way for those owners to accomplish that result for any considerable length of time, would be to induce the city to widen the side streets on the city plan to the extent of this additional five feet on each side throughout their entire length; otherwise, in a few years, with each property owner in turn encroaching a few inches or a few feet at a time, and his neighbors, for friendly reasons, loath to interfere, it will be but a comparatively short time when both this five-feet restriction on the corner lots, and also the entire twenty-feet restriction on the side avenue lots will have practically disappeared. A neighborhood restrictive scheme has, like an aeroplane in the sky, a constant

and ever-pulling tendency to come down. The law of gravity pulls down always upon the aeroplane; the adverse policy of the common law, and the trait of human nature which prompts every one to step a little ahead of his neighbor, exert a constant like tendency upon the neighborhood scheme.

For the foregoing reasons I favor a reversal of the decree of the court of chancery, to the end that the injunction therein granted may be limited to the portion of defendant's lot within a distance of five feet from the west line of Montpelier avenue.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK—12.