WILLIAM LAVERACK AND WIFE, complainants,

*v.*

MARY E. ALLEN, defendant.

[Decided July 7th, 1924.]

**Deeds—Restrictions—Neighborhood Scheme of Restriction Must be Universal—Release From Restrictions—Complainants' Prayer Granted.**

On bill for injunction.

*Mr. George R. Vaughan* and *Mr. Elmer King,* for the complainants.

*Mr. William A. Dolan,* for the defendant.

FIELDER, V. C.

By deed dated October 4th, 1920, Lilian Maxim and husband conveyed to William F. Beck a lot situate on the shore of Lake Hopatcong, about fifty feet front on Maxim Drive and about two hundred and thirty-nine feet in depth to the lake. The deed contained a clause that it was made and accepted subject to certain covenants and restrictions, among which were that the grantee, his heirs and assigns, should not at any time thereafter permit or allow any building, which might be erected upon the granted premises, to be used as a place of business, or any building whatever other than a private dwelling; that the covenants and conditions restricting the use of said premises should attach to and run with the land, and that it should be lawful, not only for the grantors, but also for the owner of any lot in the vicinity, or adjoining the premises granted, deriving title from or through the grantors, to institute and prosecute any proceedings at law or in equity against the person violating said covenants. The deed also contained a clause reserving to the grantors full right and authority at any time thereafter to make all such changes in said covenants and restrictions as they might elect, and to release and annul the same.

By deed dated June 30th, 1921, Beck conveyed said lot to the complainants. His deed did not set out the covenants and restrictions, but contained a clause that his conveyance was made subject to the covenants, conditions and restrictions mentioned in the deed to him. On this lot complainants have erected a dwelling-house.

By deed dated July 1st, 1921, Lilian Maxim and husband conveyed to said William F. Beck an adjoining lot about sixty-eight feet front on Maxim Drive, running through about two hundred and fifty feet to the lake, which deed contained all the clauses, covenants and reservation contained in the first deed from Maxim to him.

By deed dated July 7th, 1922, Beck conveyed to the defendant a part of the last-mentioned lot, fronting on Maxim Drive about sixty-eight feet and having a depth of fifty-four feet, immediately adjoining the lands of the complainants.

This deed did not set out the covenants and restrictions, but contained a clause that the conveyance was made subject to all reservations and restrictions contained in the second deed from Maxim to Beck.

About the middle of May, 1923, the defendant commenced the erection of a building on her lot and completed the same in two weeks. This building presents the appearance of a bungalow dwelling, but the front windows on the porch are removable, and, when removed, the front of the building is open and the defendant conducts therein a store for the sale of groceries and other merchandise. The complainants seek to enjoin the defendant from violating the covenant or restriction against the use of any building on the premises as a place of business, set out in the deed of July 1st, 1921, from Maxim to Beck, and recited in the deed of July 7th, 1922, from Beck to the defendant. The defendant admits the violation, but defends against its enforcement on several grounds.

She contends that the restrictions were imposed pursuant to a scheme or community plan for the development and sale by lots of a large tract of land, and that it would be inequitable to enforce the covenant again her lot, because the character of the neighborhood has changed since the scheme was adopted.

To constitute a neighborhood scheme of restriction, the scheme must be universal—that is, the restrictions must apply to all lots of like character brought within the scheme. Unless it be universal, it cannot be reciprocal. If it be not reciprocal, then it must, as a neighborhood scheme, fall. *Scull* v. *Eilenberg, 121 Atl. Rep. 788.* The lots now owned by complainants and defendant are part of a large tract acquired by Mrs. Maxim, which is about two miles long in a northerly and southerly direction and about a mile wide. It is on the shores of Lake Hopatcong and is largely occupied by summer homes. Mrs. Maxim conveyed many lots therefrom by deeds containing the same form of covenants and restrictions and like reservation of right to the grantor to release or modify the same, as are contained in her deeds to

Beck. Her predecessors in title, owning the same tract, conveyed lots therefrom by deeds similar in form as to restrictions and reservations of right to release. Whether such predecessors in title conveyed any lot without restriction, or exercised the reserved right to release or modify restrictions, does not appear. The evidence shows that Mrs. Maxim imposed the restrictions for the purpose of developing residential sections in the tract and to protect her grantees who bought for residential purposes, and that she intended to reserve, and now claims the right to change, alter or annul any covenant at any time, as she sees fit; that she has recognized a necessity for business places in different sections of the tract, and by some of her deeds has conveyed without restrictions against business, or has expressly granted the privilege to conduct various business enterprises, and, in some instances, where she had by deed imposed restrictions against business, by subsequent deeds, or by written agreement with her grantees, has modified or released the restrictions, and that she followed such course in various localities on the tract. The deeds from Mrs. Maxim and from her predecessors in title, contained no covenant or agreement on the part of the grantors, that covenants or restrictions similar to those imposed on their grantees should be inserted in subsequent deeds made by the grantors of their remaining land, nor in any other way restrict such grantors in the use or disposition of their remaining land. To the contrary, by the reservation referred to, they expressly notified their grantees that they proposed to make such use or disposition of their remaining lands and to permit their grantees to make such use of theretofore conveyed lands, as they (the grantors) saw fit. Under this reservation Mrs. Maxim claims the right to release the restrictions imposed on the complainants' lot and to refused to release, or even modify, the same restriction on the defendant's lot.

On this state of facts I cannot treat the covenant as having the characteristics of a neighborhood scheme of development. Rather, it is a special covenant entered into with Mrs. Maxim, limiting or restricting the use of the lands primarily

for the benefit of her retained adjacent lands, but which benefit grantees of such adjacent lands may also enjoy, so long as restrictions remain in force. *Coudert* v. *Sayre, 46 N. J. Eq. 386; Bowen* v. *Smith, 76 N. J. Eq. 456; Scull* v. *Eilenberg, supra.* Such covenant remains binding on the defendant's lands until released or modified by Mrs. Maxim, or until the permissive general use of surrounding lands for other than residential purposes, renders the covenant of no benefit of adjacent lands, and thus makes it inquitable to deprive the owner of the defendant's lands of the use of such lands in the same manner as the owners of the adjacent lands are using theirs. *Page* v. *Murray, 46 N. J. Eq. 325; Ocean City Association* v. *Chalfant, 65 N. J. Eq. 156; Scull* v. *Eilenberg, supra.* On the large tract there are several stores and business offices, a moving picture theatre, a livery stable and riding school, a church, several hotels and boarding-houses, a lumber yard and dancing pavilion, all of which are distant at least a mile from the property in question, and the only business conducted, in what may be called the immediate vicinity, is a boarding-house across the road, nearly opposite defendant's lot, the renting of boats at a public dock about two hundred feet away, a grocery store and post office about three hundred feet away (on property never owned by Mrs. Maxim), and a store and dancing pavilion about a quarter of a mile distant; otherwise, the property within a radius of a quarter of a mile, is vacant or occupied by dwellings. All the enumerated businesses in the immediate vicinity were in existence when defendant bought and became bound by the restrictions, and there was no reciprocal covenant upon which she could rely for the elimination of such businesses. I cannot regard the location of several or many business enterprises a mile away from defendant's lot, or the few in the immediate vicinity of the lot, as material or as indicating such use of surrounding lands for business purposes as will justify the defendant in depriving the complainants of the benefit of the restrictions on the defendant's lot. The location of business places in one section of a large tract will not affect the binding force of restrictions for residences in another section

41

whose character has not changed. Changes in the residential neighborhood depend upon their number and character, and if, as in this case, they do not interfere with the enjoyment by lot owners of the benefit of the neighborhood as a place of residence, or show a general intention to abandon such plan, they are not material. *Morrow* v. *Hasselman, 69 N. J. Eq. 612; Sanford* v. *Kerr, 80 N. J. Eq. 240.*

The defendant urges as a defense that, before she purchased her lot from Beck, Mrs. Maxim agreed with Beck to release the strictions, and that after she had opened her store Mrs. Maxim consented to its continuance. The evidence does not satisfy me that such are the facts, but, however that may be, the complainants, and not Mrs. Maxim, are seeking to enforce the restrictions, and the latter is not a party to this suit. The defendant was fully informed of the restrictions before she accepted her deed. She knew she was accepting a deed subject to them, and she must be held to have had notice of the complainants' rights under them. In the usual case, where the grantor has conveyed a lot subject to restrictions imposed for the benefit of an adjoining lot, he has no right to release or modify the restrictions so far as they operate to confer a benefit on such adjoining lot, after he has conveyed it (*Coudert* v. *Sayre, supra; Bowen* v. *Smith, supra*), but in this case, by accepting a conveyance of their lot subject to the terms of the deed from Mrs. Maxim to their grantor, whereby Mrs. Maxim reserved the right to release or modify the restrictions, complainants could probably not complain in case Mrs. Maxim had chosen to release the restrictions. However, until she has actually executed and delivered such release, either voluntarily or under a decree made in a suit in which she is a party, the complainants are entitled to the benefit of such restrictions.

The defendant's final defense is that before she commenced the erection of her building, or during its erection, the complainants knew she proposed to use it as a store, and that, by consenting or making no objection thereto, they are now estopped from enforcing the restrictions as against her store. I am satisfied that the complainants did not have

such knowledge before the defendant started work. The evidence is conflicting as to the complainants' knowledge of the defendant's intention after the supporting piers for the building were up and prior to the completion of the building, but because the building has the appearance of a bungalow and was wholly erected in two weeks, I do not think the complainants could have ascertained the purpose of the building by using their eyes during the progress of the work, and I shall have to find that they were not apprised by the defendant of her intention and that they did not acquiesce therein, or refrain from objecting when they should have spoken. The defendant did not erect her building in ignorance of the complainants' rights, and, knowing those rights, she proceeded at her peril. It does not now lie with her to complain that the complainants did not object. *Bridgewater* v. *Ocean City Railroad, 62 N. J. Eq. 276, 292; affirmed, 63 N. J. Eq. 798.*

The prayer of the bill of complaint will be granted.