This is a bill for an injunction to restrain defendant from violating certain alleged restrictions on real estate.
The tract of which complainants' and defendant's lots are a part was mapped and sold as building lots by the Soho Park and Land Company.
The company sold to complainant Margaret J. DeRossett two lots by deed recorded in the register's office of Essex county, May 10th, 1921. The same company, by contract, agreed to convey to James L. DeRossett another lot in the tract, which contract is still in force. The same company conveyed to defendant a large number of lots in the tract by deed recorded in the register's office of Essex county on December 19th, 1924.
These deeds and the contract contain the following restriction:
"No business, trade or manufacture of any sort or nature shall be conducted on the premises hereby conveyed; no building shall be erected thereon except one private dwelling house for one family with a garage appurtenant thereto; one such dwelling house with such garage may be erected on each separate lot hereby conveyed."
Defendant started to erect on three of his lots a building for purposes other than residential. Two maps were made of this property. The Soho Land Company in 1915 laid out a tract of eighty-four lots and called it Soho Park. In 1918 it acquired a tract six times larger, included the entire tract — the small old one and the large new one — into a map of five hundred and twenty-two lots. The contract of complainant Margaret J. DeRossett, her deed, and the contract of complainant James DeRossett, all refer to the 1915 map; a copy of the map was recorded in the register's office, and a copy of it was attached to and recorded with Margaret's deed.
Defendant argues that there was no community scheme. It should be noted that the lots of the defendant as well as *Page 441 
those of complainants are on the south side of John street in the small old tract.
In its contract with Margaret, the land company stated:
"The seller covenants with the purchaser that it has not conveyed any of the lands on said map by deeds which do not contain the same covenants, and that it, and its successors, will not hereafter sell or convey any of said lands on said map except by deed or deeds which shall contain the same covenants, it being the intention that said covenants shall be uniform and shall be binding on all the lands on said map. This covenant shall survive the delivery of said deed. The provisions hereof shall inure to the benefit of and bind the parties hereto and their respective legal representatives, successors and assigns."
It satisfactorily appears from the testimony that between fifty and sixty other deeds were issued containing practically the same restrictions. Also there is evidence that all of the lots that have been built upon conform to the restrictions in the character of the buildings. It seems to me, therefore, that a community scheme was clearly contemplated and carried out. The next question is whether the defendant had knowledge of this scheme. I believe he had not only actual but constructive notice. The actual notice consisted of the restriction in his own deed. The constructive notice was that, noting the character of his own deed, he could or should have investigated the title to determine what the exact situation was. Especially is that true because the searcher employed by the defendant informed him of the restrictions. He could have gone upon the premises and then would have discovered that all the buildings in the tract conformed to the restrictions in his deed.
In the case of Richard DeGray v. Monmouth Beach Club HouseCo., 50 N.J. Eq. 329, this court held as follows: "Where there is a general scheme or plan adopted and made public by the owner of a tract for the development and improvement of the property by which it is divided into streets, avenues and lots, and contemplating a restriction as to the uses to which buildings or lots may be put to be secured by a covenant embodying the restriction to be inserted in each deed to a purchaser, and it appears by writings or by the circumstances *Page 442 
that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject to and have the benefit thereof, and the covenants are actually inserted in all deeds for lots sold in pursuance of the plan; one purchaser and his assigns may enforce the covenant against any other purchaser and his assigns if he has bought with knowledge of the scheme and the covenant has been part of the subject-matter of his purchase."
In Sanford v. Keer, 80 N.J. Eq. 240, the court of errors and appeals held: "Where a tract of land is divided into building lots and a plan exhibited showing to prospective purchasers the streets and lots thereof, and such purchasers are induced to buy the lots by and in reliance upon representations, either public or private, that all conveyances would contain protective restrictions of a designated character and purpose, the restrictive covenants inserted in the conveyances of the lots in accordance with these representations constitute a general or neighborhood scheme and may be enforced between the lot purchasers inter sese."
In the case of Shoyer v. Mermelstein, 93 N.J. Eq. 57,
Vice-Chancellor Backes said: "Covenants restricting the purchasers of lots in a given area to the erection of one-family houses constitute a neighborhood or community scheme, the regulations of which a lot owner must observe if he had notice thereof at the time he purchased his lot, or if he was put on his guard and reasonable inquiry would have led to such knowledge. Where all the houses in a given area were one-family houses a purchaser of a lot in such area under a deed restricting him to the erection of a two-family house which should have the appearance of a one-family house was charged with notice of a community scheme included in the deeds to others in the community, but not in the deed to him, and may be enjoined from erecting a two-family house, although he had inquired of his grantor and consulted the city authorities as to whether he might build such a house, and although houses in the plot north of such restricted area and adjoining the north line of his lot were all two-family houses. Under such circumstances it is the duty of the purchaser *Page 443 
of the lot to inform himself by inquiry in the immediate vicinity as he had knowledge from his own deed that there were structural restrictions on the land."
In the case of Polhemus v. DeLisle, 98 N.J. Eq. 256,
Vice-Chancellor Berry said: "The common grantor of lots subject to a restrictive covenant is without the least shred of authority or right to release or modify the covenant so far as it operates to confer a benefit on lands which he had previously conveyed nor by its own interpretation to modify the plain meaning of the restrictive covenant imposed on all lots in the tract and thereby bind its prior grantees."
Counsel for defendant says that under the map of 1918, above alluded to, a large part of the new tract was conveyed without restrictions to a golf club. Therefore, the community scheme is broken. In the first place, complainants purchased under the map of 1915 and their rights were fixed by that map and the surrounding circumstances I have above enumerated, and the restrictions in the deed. Moreover, if such a contention were sound, the only thing that would be essential in breaking the restrictions in a community scheme would be to buy more land, make a new map including the restricted area and sell in any way that seemed fitting. Also, there is no evidence of any acquiescence on the part of complainants in this violation of restrictions, if it be such.
In Bridgewater v. Ocean City Railroad Co., 62 N.J. Eq. 276
(at p. 295); affirmed, 63 N.J. Eq. 798, the court said: "That the complainant has lost all rights to enforce the covenant because the association has, within the past three years, wrongfully permitted several buildings to be put up on the camp ground, is no excuse for the defendant. No such acquiescence is proven as charges him with any liability for the association's breach of the covenant, nor can the defendant's donees of the association set up the wrong-doing of their donor to protect them against the donor's implied covenant."
It is further contended that the land company released the restrictions in defendant's deed. The release reads: "To the extent to which the party of the first part has the right *Page 444 
to so release the same." This language plainly expresses a doubt as to the authority to make such a release. In my opinion the company had no authority whatever to make such a release. The rights of the complainants were fixed under the map of 1915 and the surrounding circumstances and under the cases above quoted.
Vice-Chancellor Fielder, in the case of Laverack v. Allen,130 Atl. Rep. 615 (at p. 617), says: "In the usual case where the grantor has conveyed a lot subject to restrictions imposed for the benefit of an adjoining lot, he has no right to modify the restrictions so far as they operate to confer a benefit on such adjoining lot after he has conveyed it." The learned vice-chancellor cites Coudert v. Sayre, 46 N.J. Eq. 386;Bowen v. Smith, 76 N.J. Eq. 456.
I will advise a decree for an injunction according to the prayer of the bill.