This is a bill to restrain the defendants from erecting any building on land having a frontage of less than one hundred and fifty feet, or from selling any property without inserting *Page 542 
such a restriction in the deed. It is conceded that no such restriction appears in the defendants' chain of title. The theory of the bill appears to be that the defendants had knowledge of a community scheme which requires such restrictions.
On June 11th, 1901, a large tract of land in Monmouth county was conveyed to the Central Realty Bond and Trust Company. It contained no restrictions. On April 10th, 1902, the Central Realty Bond and Trust Company made and filed a map showing six blocks of various sizes and dimensions, without any regularity as to form, shape or frontage. The Central Realty Bond and Trust Company made nineteen conveyances, six of which had no restrictions. On January 5th, 1906, it conveyed all of its holdings to the Elmore Realty Company, excepting therefrom land previously conveyed by it and referred to in said deed. This deed contained no restrictions. The deed to the Elmore Realty Company was by metes and bounds, without reference to the filed map. Thereafter the Elmore Realty Company executed twenty-one deeds of conveyance. Two of these deeds have no restrictions. There is also a deed from the Elmore Realty Company to Catherine L. Durant, reciting change in the character of the neighborhood and releasing said land from the restrictions contained in the deed from Elmore Realty Company to Regina Rothschild. The restrictions in that deed are practically similar to those contained in the deed from Elmore Realty Company to complainant under the name of Sidney H. Rosenthal. The property mentioned in the Rothschild deed is not in the parallelogram which it is claimed involves a community scheme. There seems to be no deed which by its express language provides that no building shall be constructed on a lot having a frontage of not less than one hundred and fifty feet.
On November 23d 1925, the Elmore Realty Company conveyed to the Davimir Realty Company lots and portions of lots with a one hundred-foot restriction. Complainant alleges that Davimir Realty Company took with knowledge of a community scheme. The only evidence of this that I can discover is that of a Mrs. Noll, who says she had such knowledge and "kicked" when she thought there might be a *Page 543 
violation of it. This is not sufficient to show there was a community scheme or that Davimir Realty Company had knowledge of it. There appear to have been eleven conveyances by either Elmore Realty Company or Davimir Realty Company for lots having a frontage of less than one hundred and fifty feet.
On September 15th, 1908, Elmore Realty Company conveyed property to Sidney H. Rosenthal one hundred and fifty feet front by three hundred feet deep. The deed contained this restriction:
"That no habitation other than a private dwelling house shall be erected on said premises, nor shall more than one such private dwelling house be erected upon said premises."
Rosenthal also purchased from Ida Herzfeld a lot one hundred and fifty feet front by three hundred feet deep, and forty feet of the adjoining lot. He built on this lot. This certainly seems at variance with a theory of a community scheme providing for lots of a uniform frontage of one hundred and fifty feet.
Reference is made to title policies issued by the Monmouth Title Company. There were three. The first one contains this language inter alia, "in so far as the neighborhood scheme has been effected." This would seem to indicate that the company is in doubt as to whether a "neighborhood scheme" really exists. The second does not refer to restrictions as set forth in the first policy. This property has one hundred feet of frontage. The third refers merely to restrictions contained in deed from Elmore Realty Company to the Davimir Realty Company. This deed has one hundred-foot restrictions. The property described in all three of these policies is on the block in which complainant's property is located, yet the same restrictions are not carried in them.
The complainant lays great stress on a letter from Senator Stevens, dated October 1st, 1926, calling attention to a community scheme. It is conceded that the knowledge of Mr. Meyer, who owned eighty-five shares of the defendant Allen Realty Company is highly material. Unfortunately, Mr. Meyer died before his testimony could be taken. From the *Page 544 
testimony before me, I cannot conclude that Mr. Meyer understood the legal force and effect of whatever restrictions there were, or that he had knowledge that there was a community scheme contemplated. I do not think, moreover, that Senator Stevens' letter, written in 1926, was sufficient to establish a community scheme. Especially is this so when it appears that nearly a year before Senator Stevens' letter the Elmore Realty Company conveyed lots and portions of lots to the Davimir Realty Company with a one hundred-foot frontage restriction, and before that other portions of the property were conveyed, some without restrictions and some with restrictions — these restrictions not being in every case identical.
The case of Scull v. Eilenberg, 94 N.J. Eq. 759, is cited by both counsel in their briefs. Applying it to the facts in this case as stated above, it sustains defendants' contention that the community scheme argued for by complainant, even if it ever existed, has fallen. Mr. Justice Katzenbach, speaking for the court of errors and appeals, said (on page 762):
"A neighborhood scheme of restrictions to be effective and enforceable must have certain characteristics. It must be universal, that is, the restrictions must apply to all lots of like character brought within the scheme. Unless it be universal it cannot be reciprocal. If it be not reciprocal, then it must as a neighborhood scheme fall, for the theory which sustains a scheme or plan of this character is that the restrictions are a benefit to all. The consideration to each lot owner for the imposition of the restriction upon his lot is that the same restrictions are imposed upon the lots of others similarly situated. If the restrictions upon all lots similarly located are not alike, or some lots are not subject to the restrictions while others are, then a burden would be carried by some owners without a corresponding benefit. * * *
"Where the restrictions are not universal or after frequent violations of the restrictions have been permitted, then the neighborhood scheme will be considered abandoned."
And again on page 767:
"In the restrictions and covenants inserted in the deeds of the Chelsea Beach Company there was no reciprocal covenant *Page 545 
made by the company that it would insert like covenants in all deeds for the remaining lots similarly located for the common benefit of all of the grantees and their assigns."
It is conceded that no such restriction as is argued for by complainant appears in defendants' chain of title. Therefore the case of Young v. Calley Land Co., 103 N.J. Eq. 478, applies. I there said, following the court of errors and appeals inMitchell v. D'Olier, 68 N.J. Law 375: "A purchaser is only bound to look to his own deed and chain of title. The fact that Condit agreed to restrict in a deed to other property owned by him is not notice to defendant and does not bind him."
The case of Klein v. Sisters of Charity of Saint Elizabeth,101 N.J. Eq. 761, presented facts similar to those before me now. Vice-Chancellor Fielder quoted as I have from Scull v.Eilenberg, supra, and there said:
"Hence, the restriction in question cannot be considered as having been imposed on lot nineteen pursuant to a general scheme of restriction applicable to all lots of the common owner, similarly located, and the covenant is not enforceable by a subsequent grantee of adjoining or adjacent land, as part of a general building scheme.
 * * * * * * *
"The restrictive covenant as contained in the deeds to Nevin and to defendant is in form, but the personal covenant of each grantee of lots seventeen and eighteen with his grantor. It purports to state the whole agreement between the parties to it and it gives notice to subsequent purchasers of the extent to which the covenantors bound themselves. I am not persuaded that anything can be read into it to make it mean something more than what the parties to it stated, and, therefore, testimony as to what the owners of these several lots agreed among themselves as to restrictions is not admissible to show its meaning and effect as against a covenantor who was not a party to such parol agreement."
In Enderle v. Leslie Construction Co., 102 N.J. Eq. 569,
Vice-Chancellor Backes said, citing Klein v. Sisters ofCharity of Saint Elizabeth, supra: *Page 546 
"To that time we have but the meagre testimony of Mr. Haas, of a scheme by representations, and that is neutralized by the absence of covenants in his own deeds.
"Thereafter the covenants were consistent * * *. Assuming that the facts prove the intent to thus create a general scheme, it was too late to be effectual. It broke down in the making."
In Beattie v. Howell, 98 N.J. Eq. 163, Vice-Chancellor Bentley said:
"It is impossible to conceive of any theory upon which the prayer can be granted. In a nutshell, the difficulty may be expressed by saying that the bill is framed to enjoin the violation of a restrictive covenant when no such covenant exists."
The learned vice-chancellor then referred to Scull v.Eilenberg, supra, and showed that in that case each of the deeds contained the covenant in question. The learned vice-chancellor further said:
"* * * it is sufficient to say that if the original grantor does not bind himself by a covenant such as the one under consideration, then his grantee, having no right of action against the grantor, cannot pursue any other grantee to whom the latter may subsequently convey the remaining land, either in whole or in part. A subsequent grantee can enforce such a covenant against a prior grantee of another lot, but a prior grantee cannot enforce the covenant against a subsequent grantee."
In that case the complainant tried to bring itself within an exception to the rule and the learned vice-chancellor said:
"* * * the exception is only applicable to those cases where the defendant takes title subject to a restrictive covenant in his deed, or with notice of such a covenant in the deed from the original grantor through whom he acquires title by mesne conveyances."
It seems to me quite clear, therefore, that under the facts in this case and the decisions I have quoted there is not and never was a community scheme which can be enforced in this court.
I will advise a decree dismissing the bill. *Page 547