### BREWER *vs.* MARSHALL and CHEESEMAN.*

1. A covenant made by the grantor in, or at the time of, the conveyance of land, relating to the land, runs with the land, and enures to the benefit of any subsequent purchaser from the grantee or covenantee.

2. A covenant made by the owner of land with a stranger to the land to which it relates, will not run with the land when conveyed away by the covenantor, so as to be a burthen upon it, although the deed containing the covenant may convey other land which the covenant was intended to benefit.

3. A covenant will not run with land so as to be a burthen upon it in the hands of the purchaser, unless there be some privity of estate between him and the covenantee.

4. A covenant may amount to a grant, and thus create an easement and impose a servitude upon the land of the covenantor; in which case the

* CITED *in Grigg* v. *Landis*, 6 *C. E. Gr.* 502; *Bank* v. *Segur*, 10 *Vr.* 184.

land will be liable in the hands of every subsequent purchaser, to the burthen of such servitude.

5. A covenant not to sell marl from a certain tract of land, or not to carry on any specific business upon it, does not create an easement, or impose a servitude; it is only a personal covenant.

*Mr. J. Wilson,* in support of the motion to dissolve.

*Mr. Browning,* contra.

THE CHANCELLOR.

The injunction in this case restrains the defendant, Marshall, from selling or removing from the farm conveyed to him by the defendant, Cheeseman, known as the Swope farm, any marl, and from digging any marl on it except for the use of the farm. The defendants have filed their answer, and move to dissolve the injunction.

The defendant, Cheeseman, was, in 1841, seized of a farm in the county of Gloucester, known as the Swope farm, on which there were valuable beds of marl. On the twenty-third of February, in that year, he conveyed to James W. Lamb, two tracts of that farm, one a tract of forty-eight acres, lying east of the Cross Keys road, which divided the farm, and another of twelve and a half acres, lying west of the road, on Great Timber creek, and which, in the deed, is described as "twelve acres and a half of marl land." The deed grants a right of way over a strip twenty feet in width, from the road to the creek, along the marl lot, and contains in the description of the premises, after the description of the way, these words: "Also, the said George Cheeseman, his heirs or assigns, are not to sell any marl by the rood or quantity from off his premises adjoining the above property."

On the fourteenth of December, in the same year, Lamb conveyed back to Cheeseman the forty-eight acre lot. On the third of January, 1842, Cheeseman conveyed to Lamb another part of the Swope farm in two lots. One was a lot

of seven acres adjoining the creek, and north of and adjoining the twelve and a half acre lot; the other was a strip of one acre, leading from the seven acre lot eastwardly to the road, and including the land over which the right of way had before been granted. On the same day, Cheeseman executed to Lamb a bond in the penalty of $5000, secured by a mortgage on part of the Swope farm not conveyed. The conditions of the bond and mortgage (which were both in the same words) contained this recital : that Cheeseman, in consideration of $1650, had, by deed of the same date, conveyed to Lamb a lot of seven acres, part of the Swope farm ; that the principal value of said lot consisted in the valuable beds of marl upon it; that there were divers like beds of marl upon the residue of the Swope farm ; that said sum was paid not only as the consideration for said lot, but upon the express agreement between the parties, that neither Cheeseman, his heirs or assigns, nor any other person holding said farm, should, within thirty years from the date, dig, sell, remove, or suffer to be dug, sold, or removed, from off the said farm, any part or parcel of the marl thereon, except for the use of the farm, " so that the said marl, or any part thereof, should not be sold or otherwise brought into competition with the marl of the said James W. Lamb ;" and upon the further agreement that for any violation of said covenant, by the said Cheeseman, his heirs, executors, administrators, or assigns, or other persons holding said farm under him or them, said Cheeseman, his heirs, executors, or administrators, should pay to said Lamb, his heirs, executors, administrators, or assigns, the sum of $500. The condition was that if they did not so dig or sell, and if they paid up such penalties, the obligation and mortgage should be void.

On the sixth of September, 1842, Lamb conveyed back to Cheeseman the seven acre lot, except a triangular part containing about one-tenth of an acre, retained to give access from the one acre strip (used as a way) to the twelve and a half acre lot; this being the means of communication from that lot to the Cross Keys road.

Lamb conveyed the twelve and a half acre lot, the one acre used for a way, and the tenth of an acre reserved from the seven acre lot, to the complainant, Brewer, by two deeds, one dated March third, 1847, the other dated January third, 1848 ; the last deed conveyed the one acre used as a road, and the tenth of an acre reserved from the seven acre lot. And on the same day, Lamb assigned to Brewer the bond and mortgage given to him by Cheeseman.

Cheeseman, by four deeds made at different times, conveyed to the defendant, Marshall, the rest of the Swope farm not conveyed to Brewer.

Both defendants have, at different times, dug, removed, and sold, from the seven acre tract and other parts of the Swope farm, marl by the ton and measured quantity, since 1842 ; and the defendant, Marshall, was continuing to do so, until the injunction.

These facts appear by the bill, and are admitted by the answer.

The complainant insists, that the clause in the deed of 1841, and the agreement recited in the bond and mortgage from Cheeseman to Lamb, are real covenants running with the land ; that he, as the assignee of Lamb, and the owner of the lands conveyed to him, is entitled to the benefit of these covenants ; and that Marshall, as the assignee of the land to which they relate, held by Cheeseman at the making of them, holds that land subject to the burthen of these covenants, and is bound to observe them.

Upon the correctness of these positions, the whole question of the injunction depends.   If the covenants do not run with the land conveyed to Brewer, he, as assignee, cannot have the advantage of them ; and if the burthen of them does not run with the land conveyed to Marshall, he is not bound by them.   In either case, the injunction against Marshall ought not to be retained.

There has been much discussion in the courts, as to what covenants or agreements are real covenants, and run with the land, so that the assignee or heir of the land can take ad-

vantage of them, and as to what covenants run with the land burthened by them, so that the assignee or heir takes the land subject to the burthen.

Both of the covenants in this case are valid as personal covenants; Lamb could maintain a suit against Cheeseman for their violation, and could recover his damages. For the purpose of this motion, we may admit that the mortgage is valid as against Marshall; he took title subject to it, and his lands are liable, in case of forfeiture or breach of condition. But the injunction does not depend upon that question; for such damage Brewer, as assignee, must look to a foreclosure and sale. The injunction can only be maintained on the ground that the agreement in the recital is a covenant real, running with the land.

The leading case on this subject is Spencer's case, reported in 5 *Rep.* 16, and printed and commented on in 1 *Smith's Lead. Cas.* 115. There Spencer demised a house and lot to S. for years. S. covenanted for himself, his executors, and administrators, that he, his executors, administrators, or assigns, would build a brick wall on part of the land demised. S. assigned the term to J., and J. to Clark. Spencer sued Clark for a breach of the covenant to build the wall. The court, by the first resolve, held, that a covenant only bound the assignee when it was concerning a thing *in esse*, parcel of the demise, not when it related to a wall to be built. By the second resolve, they held, that if the covenant had bound *the assigns* by express words, it would have bound the assignee, although it was for a thing to be newly made, as it was to be upon the thing demised; but that if the covenant was for a thing to be done collateral to the land, and did not touch or concern the thing demised, in any sort, as if it were to build a house upon other lands of the lessor, the assignee should not be charged, although the covenant was for the covenantor and *his assigns*.

The two principles thus settled, have always been acknowledged as law: that the assignee when not named, is not bound by a covenant, except it relates to a thing *in esse* at

the time; and that when named, he is not bound by a covenant collateral to the land, but only for things to be done on, or concerning the land.

The case of the *Mayor of Congleton* v. *Pattison*, 10 *East* 130, confirms these positions. In that case, the plaintiffs demised to Clayton, mills in Congleton; he covenanted for himself *and assigns*, to hire no one to work in the mills but inhabitants of Congleton. Clayton assigned to Pattison, who was sued on the covenant. Although the thing to be done was on the premises demised, yet as it did not affect the use of them, but only the value of other lands of the lessors in Congleton by relieving them of an increase of poor rates, the court held the assignee was not bound. To the same effect is *Keppell* v. *Bailey*, 2 *Mylne & K.* 517; *Hurd* v. *Curtis*, 19 *Pick.* 459, and many other cases that will be found in the notes to Spencer's case, in Smith's Leading Cases. In this case the covenant, though not to be performed *on* the twelve acre lot, is yet alleged to be *touching or concerning it,* and therefore may be held to pass to the assignee of that lot. It is true that selling marl from the rest of the Swope farm would not affect the twelve acre lot, or its use or enjoyment, but it might affect the market value of the marl dug from it. The application of the rule in Spencer's case, naturally divides itself into two classes of cases; one, when the premises conveyed or demised, are sold or assigned by the convenantee, and the question is whether the covenant passes to such assignee, as running with the land; the other, when the covenantor sells or assigns his interest in the lands, and the question is whether the burthen of the covenants is impressed upon the land, and passes with it and binds the assignee of the covenantor.] And although in this case it may be held that the covenant of Cheeseman runs with the land sold to Lamb, and passed to Brewer so that he is entitled to sue Cheeseman for a breach, yet it is a very different question, whether the burthen of it is impressed upon the land retained and sold to Marshall, and the obligation of it assumed by him, on the purchase of the land from Cheeseman.

The result of their review of the authorities and cases on this point, is stated by the English and American editors of Smith's Leading Cases, in their notes on Spencer's case, and I think, gives correctly the law upon it. The English editor says, on page 123, vol. 1 : "By the common law, except in the case of landlord and tenant, the burthen of covenants does not run with the lands, though the benefit does;" and again on page 125 : "With respect to covenants entered into by the owners of the land, great doubt exists whether these, in any case, run with the land so as to bind the assignees of the covenantor;" and on page 133 : "Upon the whole there appears to be no authority for saying that the burthen of a covenant will run with land in any case, except that of landlord and tenant." The American editors say, on page 144 : "On the whole, therefore, we may infer that the burthen of covenants charging land, made by the owner with an entire stranger to the land so charged, will not run with the land at law, nor rest upon the parties taking it by assignment, even where the covenantee takes, by virtue of the deed containing the covenant, an estate in other and distinct land belonging to the covenantor."

This rule does not apply to the liability of the assignee of a term to pay the rent reserved. Rent, by its definition, issues out of the land, and it is made a charge upon it by the lease, without any covenant to pay it, and does not depend upon the covenant. But it has been held to apply to an after made covenant to pay the rent *free from taxes.* In *Brewster* v. *Kidgel,* 12 *Mod.* 166, Lord Holt said if it was a *grant* of the rent, it would be another matter, but it is here only a covenant, and no words amounting to a grant, and therefore there could be no relief against the terre-tenant. The other judges held that the covenant, being in the nature of a grant, might charge the land, and decided the cause on that ground. To charge land with the burthen of a covenant there must be some privity of estate between the covenantee and the assignee of the lands so burthened, or he will not be charged with the covenant. This was so laid down by the court in

delivering their opinion in *Bally* v. *Wells*, 3 *Wilson* 29: "There must be always a privity between the plaintiff and defendant to make the defendant liable to an article of covenant."] The reasoning of Lord Brougham, in *Keppell* v. *Bailey*, in 2 *Mylne & K.* 517, is founded upon, and illustrates this principle. The decision of the Supreme Court of Massachusetts, in *Hurd* v. *Curtis*, 19 *Pick.* 462, is expressly placed upon the ground that there is no privity of estate between the plaintiff and defendant. The covenant was between the owners of mills on the same stream, as to the use of the water in their respective mills; it was drawn to bind their assigns. The defendant was assignee of the mill of one of the covenantors. It was held that he was not bound, as there was no privity of estate between him and plaintiff. See also *Plymouth* v. *Carver*, 16 *Pick.* 183.

In the case before me, it is clear that there is no privity of contract, or of estate, between Brewer and Marshall. And if such privity is necessary to that object, Marshall is not bound by the covenant.

The authorities that seem to hold a different doctrine, are chiefly those in which the agreements or covenants, made by the person then owning the land burthened, are of such a nature that they may be held to impress on the land burthened, a servitude or easement in favor of some other property of the covenantee.

Such was the case of *Tulk* v. *Moxhay*, 2 *Phil.* 774, decided by Lord Cottenham, and the cases of *Whatman* v. *Gibson*, 9 *Sim.* 196, and *Schreiber* v. *Creed*, 10 *Sim.* 35, decided by Vice Chancellor Shadwell. It was in those cases stated, that the question was not, whether the covenants run with the land, but whether there was not "an equity attached to the property." The remarks of Chancellor Williamson, in *Woodruff* v. *The Water Power Company*, 2 *Stockt.* 505, are based upon this principle. He says : " The grantor reserved to himself a right of way on the main raceway, and also a convenient landing place on the river. The right of way, as well as the landing place, was an interest in the thing granted.

and would pass as *appurtenant* to the grantor's farm. In the case of *Hills* v. *Miller*, 3 *Paige* 254, of *Watertown* v. *Cowen*, 4 *Paige* 510, and of *Barrow* v. *Richard*, 8 *Paige* 350, the covenant or agreement created an easement, either by reservation in the land granted, or by grant in other lands of the grantor. The right to light and air, without obstruction from buildings on the adjoining lands, is a well known species of easement, and the right to enjoy the pure air without being laden with odors or dust, or disturbed by disagreeable sounds, is of the like nature. They are easements that may be attached to one parcel of land, and the burthen of not erecting anything that would disturb such enjoyment, is a servitude that may be impressed upon another. But the exclusive right of carrying on a trade upon one lot is not an easement; and although a covenant not to carry on such trade upon his adjoining property may bind the covenantor, he cannot make it a servitude upon that property, so as to burthen it in the hands of purchasers.

The conclusion is, that neither the covenant nor agreement in the deed of February twenty-third, 1841, or in the recitals in the bond and mortgage of January third, 1842, are covenants that run with the land conveyed to Marshall; nor can they be considered as grants of an easement or servitude upon it, in favor of the land sold to Lamb and held by Brewer.

No opinion is intended to be given on the questions of an action at law against Cheeseman by Brewer, or of the validity of the mortgage in the hands of Brewer. The motion to dissolve the injunction has nothing to do with either.

I am of opinion that the injunction should be dissolved.*

* Decree affirmed, 4 *C. E. Gr.* 537.