Cabbol S. Walsh, J.
The plaintiffs commenced two actions against the defendant, titles in both actions being the same.
Both actions are based on certain covenants contained in a deed from Frank W. Smith and wife and Nelson B. Fox and wife, as grantors to Clayton L. Jones, as grantee, which deed is dated August 24, 1926 and recorded in the Warren County Clerk’s office on September 1,1926 in Book 169 of Deeds at page 394. The issues involved being common to both actions, they were tried together before this court without a jury and the decision of this court applies to both actions.
In the year 1926 the afore-mentioned Smith and Fox were the owners of a tract of land situate partly in the Town of Warrens-burg and partly in the Town of Chester,. Warren County, New York, on which they created a subdivision known as Tripp Lake Subdivision. The tract was subdivided into lots and a map of the subdivision was prepared and filed. On August 24, 1926 Smith and Fox conveyed Lot 27 in the subdivision to Clayton L. J ones, which said lot, after several mesne conveyances, was conveyed to the plaintiffs by two deeds, one dated August 6, 1952 and the other October 27,1952, the plaintiffs thereby becoming the successors in interest to the said Clayton L. Jones. By deed dated January 14, 1928, duly recorded in the Warren County Clerk’s office, the entire parcel comprised of Tripp Lake Subdivision was conveyed by Frank W. Smith and wife, who had previously obtained the interest therein of Nelson B. Fox, to the defendant, excepting, however, from said conveyance certain specified lots and also certain other exceptions and reservations. Therefore, the defendant is the successor in interest to the original grantors, Smith and Fox.
The deed of Smith and Fox to Jones contained the following provisions:
‘1 To induce the acceptance of this conveyance the said Frank W. Smith and Nelson B. Fox for themselves, their heirs, executors and administrators, etc., do covenant and agree as follows:
“ 1. That they shall carry running water in a proper pipe or pipes either at the front or rear of each of said lots. Said *915 water pipe to be installed in any event not later than May 15, 1927; but if said party of the second part or his assigns shall erect a house, bungalow or cottage on either of said lots before November 1, 1926, then such water would be carried to said lot before the ground is closed by frost the present fall.
“ 2. That they will carry a pole and wire line, properly installed for the transmission of electric current, along the front or rear of said lots, as soon as the Adirondack Power & Light Corporation string their distribution lines over their right-of-way on the Tripp Lake property ”.
The water pipes were duly installed at Lot 27 and water was carried and is still being carried to Lot 27, owned by plaintiffs, through these pipes and other pipes from a source of supply located on other lands which once belonged to Smith and Fox. A line of poles was erected apparently by Smith and Fox leading from a source of power on a certain power and light corporation pole, along the rear of lots 22 through 26, inclusive, to Lot 27, on which poles a wire was strung bringing electric current to the premises of the plaintiffs. In 1961 this line of poles with the wire strung along the same was blown down and to date it has not been repaired or replaced. In 1955 the water supply to Lot 27 was shut off by defendant, it being alleged by plaintiffs that the supply was cut off for about two years and denied by the defendant that the supply was shut off for that length of time, the defendant claiming that it was shut off for only about five weeks. The plaintiffs contend that the covenants set forth above, contained in the 1926 deed from Smith and Fox to Jones are affirmative covenants running with the land, obligating the defendant, as successor in interest to the original grantors, to furnish water to the plaintiffs and to furnish a pole and wire line, and to maintain and repair and replace such line when necessary, for the transmission of sufficient electric current to the lot of the plaintiffs. The plaintiffs seek damages as a result of the defendant shutting off the water in 1955 and in not restoring the supply of water until July of 1957, preventing plaintiffs from using and enjoying the said premises, and preventing them from renting the same during that period, and also demand a permanent injunction against defendant restraining and enjoining it from shutting off and refusing to supply water to the plaintiffs for use on their said premises without charge. Plaintiffs also seek damages by reason of defendant’s failure to replace the pole 'and wire line or to grant the power company an easement to go upon the lands of the defendant to erect a pole and wire line, and plaintiffs also seek a permanent injunction restraining and enjoining defendant from refusing to *916 supply a pole and wire line and requiring the defendant to carry a pole and wire line over the right of way of the defendant’s property to the .plaintiffs ’ property. Defendant denies plaintiffs ’ allegations and also submits certain defenses.
The issue is whether or not affirmative covenants real, running with the land, were created by the 1926 deed of Smith and Fox to Jones, and if construed to be such, whether or not such covenants obligate the defendant as successor in interest to the original grantors.
Under the law of the State of New York an affirmative covenant does not run with the land and cannot be enforced against a subsequent owner of the servient estate, either at law or in equity.
There are, however, certain exceptions to this rule. (Miller v. Clary, 210 N. Y. 127.) To come within the exception to the rule, it must appear and be established that (1) the original covenantor and covenantee intended such a result; (2) there has been a continuous succession of conveyances between the original covenantor 'and the party now sought to be burdened; and (3) the covenant touches or concerns the land to a substantial degree (Nicholson v. 300 Broadway Realty Corp., 7 N Y 2d 240).
It has been established in the case before us that there has been a continuous succession of conveyances between the original covenantor and the party now sought to be burdened, so that we need concern ourselves no further with this point. Taking up the question of intent between the original covenantors and the original covenantee, we must look to the language in the original deed, surrounding circumstances, the nature of the covenants, whether or not the covenants formed a part of a scheme of development, and whether or not they were inadequate if binding only upon the original parties. As to the language in the deed, the original covenantors set forth that, to induce the acceptance of the conveyance, they, for themselves, their heirs, executors, administrators, successors and assigns would carry running water in a proper pipe or pipes either at the front or rear of the lot and that they would carry a pole and wire line, properly installed for the transmission of electric current, along the front or rear of the lots. Both obligations were performed by the original covenantors. It is to be noted that there is no mention of maintaining, repairing or replacing either of such lines. That easements were granted benefiting Lot 27 over and across other portions of the land in the subdivision, from the source of supply of water and electricity, there can be no doubt. Neither in the language of the deed nor from any other circumstances can there be found an intent to *917 maintain, repair and replace in perpetuity water pipes and an electric transmission line. Once having carried the two types of lines to Lot 27, once having created an easement so that a location for the lines and an obligation not to interfere therewith would exist, the original grantors had fulfilled their obligation of keeping the lines in repair or replacing them is imposed upon those obtaining the benefit therefrom, and to expect that the original grantors, their heirs or their successors in title would be obligated in perpetuity to maintain, repair and replace such lines would be an onerous burden and impractical on its face, particularly in the absence of a clear expression of intent to do so in the original deed itself. Furthermore, the words in the deed ‘ ‘ to induce the acceptance of this conveyance ’ ’, imply a personal promise to do something immediate, something extra, at the time of negotiation and in connection with the sale,, to make it attractive to a prospective buyer to purchase the lot. This indicates to me an intent to carry the water and the electricity to Lot 27 and nothing other or beyond that agreement. The plaintiffs cannot complain that, upon such construction or interpretation, the covenants are inadequate as binding only upon the original parties, because such construction and interpretation in no way prevent plaintiffs from obtaining water or electricity.
Having found no intent on the part of the original covenantors and covenantee that the original covenantors were obligated to m'aintain, repair and replace water lines and electrical current lines, no affirmative covenant has been established nor has any affirmative covenant, as an exception to the rule, been established which may be enforced against a subsequent holder of the title to the originally burdened land.
Nor do the covenants sought to be enforced by the plaintiffs against the defendant touch or concern the land to a substantial degree. The lands of the original grantors are burdened by the easements granted the original grantee, which permit the lines to run over such lands leading from the source of supply to Lot 27. These easements constitute the benefit to the lot now owned by plaintiffs,, and in the absence of a specific, spelled-out agreement, there can not be implied a covenant to repair, maintain and replace, this being a personal matter, something collateral to the necessary objective. The right to obtain water and the right to obtain electricity and the right to bring it over the property of another from the source of supply to one’s property are the rights which enhance the value of the dominant property and its use and enjoyment, not, in the absence of an absolute agreement, the obligation to maintain, repair and *918 replace such lines by the owner of the servient estate. Expecting other land to be burdened with the expense of maintaining, repairing and replacing water and electric lines is unreasonable, the other lands doing all that is necessary in permitting the use of such land, in the form of easements, for the installation of such lines thereon so that the dominant land could obtain and maintain what was necessary for its benefit.
This case can be distinguished from the exceptions to the New York rule against affirmative covenants binding successors in title of the servient land, because in all of the exceptions the land of the servient estate was affected and involved and the burden cast upon the land itself, while in the case before us the land of the servient estate is not necessary or involved as to the expense or obligation to maintain, replace and repair. Only the use of 'the servient land upon which the line is installed and the right to the continuance of the line on and over such lands is necessary and involved, the upkeep of it being personal in nature, and the servient land itself not being needed to permit the owner of the dominant estate to maintain,, replace or repair the line.
An obligation to maintain, repair and replace the water and electric lines, in this particular instance, does not affect the legal relations of the parties to the covenants as owners of particular parcels of land. Therefore, it is held that there is no such covenant in this case which touches or concerns the land to a substantial degree. This court concludes that there are no affirmative covenants in this case binding upon or enforceable against the defendant.
This court does find, however, that plaintiffs have an easement over the lands of; the defendant for a water line leading from the source of the water supply to the premises of the plaintiffs, and that the defendant cannot interfere with or shut off the supply of water to plaintiffs’lands, although defendant has no obligation to maintain, repair or replace the water lines. This court also finds that plaintiffs have an easement over the lands of the defendant on which the plaintiffs can maintain a pole and wire line conducting electricity from a source of supply maintained by the power corporation on the latter’s right of way across the lands of the defendant, to the premises of the plaintiffs, and which easement is located along the route laid out and established by Smith and Fox, the original grantors, and with which easement and power line the defendant cannot interfere or obstruct, although the defendant has no obligation to maintain, repair or replace such power line. Nor is there any reason why defendant cannot grant plaintiffs an easement of any other *919 portion of defendant’s lands so that the distance of snch a line from the source of supply of the power corporation to the premises of plaintiffs could be shortened, if defendant were inclined to do so. Defendant having no obligation to maintain, repair or replace the pole and wire line or to furnish electricity to plaintiffs’ property, the adequacy of the supply of electricity to Lot 27 is therefore of no concern in this action and merits no consideration.
Plaintiffs do, however, have an easement over and across the lands of the defendant, from Niagara Mohawk Power Corporation pole No. 164, located on the easterly side of Old State Route No. 9, over and across a strip of land lying westerly of Lots 22 through 26, inclusive, as designated on the map of Tripp Lake Subdivision, to Lot 27, that being the strip upon which the pole and wire line were originally erected and installed, permitting plaintiffs to maintain a pole and wire line on and over said easement to conduct electricity to their premises. Defendant has no right to interfere with this easement, nor to obstruct such a line, nor to prevent plaintiffs from maintaining such a line and obtaining their electric current over such a line.
This court finds that the defendant did interfere with this right to plaintiffs to obtain electricity over this easement, from 1961 until the present, and prevented plaintiffs during that period from obtaining electricity to their premises, by refusing to grant an easement to the Niagara Mohawk Power Corporation. The testimony of one of the officials of that corporation sets forth that in 1952 or 1953 the officers of the defendant were contacted and a request made of them for a right of way to build a line to the property of plaintiffs, which request was denied. This information was in turn given to the plaintiffs. Subsequent conversations between plaintiffs and officers of defendant, while not specifically containing a request for a right of way to be given the power corporation in order for a line to be built, were such that it was clear to plaintiffs that the defendant did not intend to grant any right of way to the Niagara Mohawk Power Corporation to construct a line to furnish Lot '27 with electricity. Therefore, this court finds that plaintiffs were damaged between 1961 and the present time by having no electricity available to their premises, by reason of defendant’s refusal to permit the line to be installed over plaintiffs’ easement.
The court finds that plaintiffs’ claim that they were damaged because they were unable to carry on the business of operating a motel upon the said premises is too speculative and indefinite, there being no proof submitted as to actual plans for a motel on the site, the actual cost of its construction, anticipated costs *920 of its operation, anticipated occupancy rate, anticipated income, and many other items of proof Which would have to be considered before damages,, if any, could be considered.
The court finds that the best use of the premises was the rental of the residence building thereon, which, with the improvements made by the plaintiffs, could be used for all-year living. Taking into consideration the location of the premises, the size of the dwelling, the last available monthly rental figure of $65 obtained in 1957, the increase in the cost of living, the figure of $450 annually testified to by plaintiff Chauncey Tarantelli as cost of taxes, insurance and upkeep, the court awards damages in favor of plaintiffs against defendant in the amount of $4,800 for loss of use, enjoyment and rents.
Testimony as to the period of time during which the water supply to Lot 27 was shut off is conflicting. That the defendant, while not obligated to supply water to plaintiffs, could not interfere with, obstruct or shut off plaintiffs’ water supply, there can be no doubt. Defendant admits it was responsible for shutting off the water, 'but contends that it was only for a period of about five weeks in the fall of 1955. Plaintiffs,, however, contend that the water supply was not restored until 1957. No definite proof was submitted as to whether plaintiffs lost lany rental opportunities by reason of the water shutoff, nor was any proof submitted that plaintiffs used the premises any less during the period in question. Therefore, regardless of the length of time that the water was actually shut off, the court awards plaintiffs nomin'al damages against defendant in the amount of $150 for loss of use and enjoyment of the premises as a result of defendant’s shutting off plaintiffs’ water supply for some period between the fall of 1955 and July of 1957.
Accordingly, I find and adjudge as follows: that the covenants as to carrying running water in a proper pipe or pipes either at the front or rear of the premises now owned by the plaintiffs, known as Lot 27 on Map of Tripp Lake Subdivision, Towns of Warrensburg and 'Chester, Warren County, N. ¥., and carrying a pole and wire line, properly installed for the transmission of electric current, along the front or rear of s'aid lot, from the distribution line of the power company, as contained in the deed of Frank W. Smith and wife and Nelson E. Fox and wife, to Clayton L. Jones, dated August 24, 1926 and duly recorded in the Warren County Clerk’s office, are not affirmative covenants real, running with the land, and therefore not binding or obligatory in any manner on the defendant herein, as successor in interest to the original grantors; that the aforesaid deed granted and conveyed an easement in favor of said Lot 27 over the lands *921 of the original grantors and now owned by defendant herein for the purpose of obtaining water and electricity, the respective easements being located along the original sites of the water supply line and the pole and wire line as installed by Smith and Fox, and which easements cannot be interfered with or cut off 'in any manner by the defendant herein; that defendant grant Niagara Mohawk Power Corporation ia right of way to construct a pole and wire line on and over the original easement granted in favor of said Lot 27 for this purpose; that any such line must be erected and installed at the expense of the owner of said Lot 27, and thereafter maintained, repaired and replaced at such owner’s expense; that damages in the aggregate 'amount of $4,950, by reason of defendant’s interference with plaintiffs’ easements and rights to water and electricity, are awarded plaintiffs against defendant, together with costs and disbursements.